**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **JAMES H. RICE, JR.**, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. **19-714 PJM** |
| | * | |
| **THOMAS SHUBERT** *et al.*, | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM OPINION**

*Pro se* Plaintiff James H. Rice, Jr. has filed this suit against Defendants the Air Force Clemency and Parole Board (Board) and its Chairman Thomas Shubert, alleging various constitutional individual-rights violations stemming from Rice's parole under the Board's supervision. Rice was released from military confinement and began his parole in 1993, after serving 12 years for a murder he committed while on active duty with the Air Force. He alleges in part that Defendants have violated his constitutional rights by enforcing a condition of his parole agreement that he argues is unconstitutionally vague.

On December 14, 2018, Rice filed the present suit in the Northern District of Texas, which transferred the case to the District of Maryland on March 6, 2019. On March 16, 2020, Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF No. 30. Having considered that motion and Rice's opposition thereto, for the following reasons, the Court will **GRANT** the motion to dismiss.

## I. Background

On July 6, 1981, Rice, while on active military duty, strangled Lieutenant Steven M. Scherp to death and subsequently shot at a police officer at Laughlin Air Force Base in Del Rio, Texas. *See* Administrative Record at 240, ECF No. 30-7. Rice was charged with premeditated murder and

assault with a deadly weapon, and trial commenced before a general court martial on February 2, 1982. *Id.* Rice ultimately pleaded guilty to unpremeditated murder and assault with a dangerous weapon and was sentenced to dismissal from military service, forfeiture of all pay and allowances, and confinement. *Id.* at 246, 248.

In 1986, Lt. Scherp's parents filed a wrongful death action in Texas state court, resulting in a settlement under which Rice agreed to pay them a final judgment of $95,000 plus interest in quarterly payments over the course of seven years, to commence within 90 days after he was paroled or otherwise released from confinement. *Id.* at 255–68. The settlement agreement also required Rice to notify the Scherps within 10 days of his release or parole. *Id.* at 259–60.

Rice was approved for parole in October 1992, after submitting a binding supervision plan to the Board as part of his parole application. *Id.* at 154, 696–731. The supervision plan provided in part that "Rice intends to make payment arrangements [for the $95,000 he owed the Scherps] upon his release." *Id.* at 714. In April 1993, Rice was released from incarceration pursuant to a signed parole agreement that outlined binding conditions for his continued release from incarceration. *Id.* at 155. One of those conditions, condition 9, states, "I will in all respects conduct myself honorably, work diligently at a lawful occupation and support those dependent upon me to the best of my ability." *Id.*

Following his release on parole, Rice never notified the Scherps of his release nor made any payments in satisfaction of the 1986 settlement agreement. *Id.* at 131. In early 2016, Rice sought release from supervision. *Id.* Upon reviewing his request, the Board discovered that the civil judgment remained unpaid to the Scherps and determined that Rice was consequently in violation of condition 9 of his parole agreement for failing to conduct himself "honorably." *Id.* at 225. On June 15, 2016, the Board informed Rice that he had committed this violation by (a) failing

to notify the Scherps of his parole, (b) breaching the settlement agreement, and (c) failing to abide by his supervision plan, in which he stated his intention to make the required payments. *Id.* at 225. The Board thereupon sent Rice a restitution plan for his signature, which would require him to make monthly payments of $10,000 to the Scherps. *Id.* at 225–26, 228. After Rice, through an attorney, sent a response letter to the Board, the Board issued a modified restitution plan requiring monthly payments of $1,000 starting November 1, 2016. *Id.* at 160–66. The Board warned Rice that his continued noncompliance would constitute a violation of conditions of his parole that could result in a return to confinement. *Id.* at 165.

On November 2, 2016, following Rice's continued refusal to acknowledge the restitution plan, the Board suspended his supervision and ordered a parole violation hearing, where it was established that he had violated condition 9 of his parole agreement as well as his promise to repay the Scherps according to his supervision plan. *Id.* at 127–136, 182. Despite these violations, the Board decided to return Rice to supervision instead of confinement. *Id.* at 116. Rice signed the modified restitution plan on January 4, 2017, but maintained that the plan was a "violation of Federal statute and Texas law." *Id.* at 117. Nonetheless, he has been making the required monthly payments since that time. *Id.*

On December 14, 2018, Rice filed a *pro se* form complaint against Defendants in the U.S. District Court for the Northern District of Texas. *See* Compl., ECF No. 3. Magistrate Judge Renee Harris Toliver sent a questionnaire to Rice requesting additional information, a completed and signed copy of which Rice submitted on February 10, 2019. *See* Questionnaire Resp., ECF No. 13. On March 6, 2019, the case was transferred to this District, given that the Board is located at Andrews Air Force Base in Prince George's County, Maryland. Order, ECF No. 15. On March 16, 2020, Defendants filed the present motion to dismiss, which has now been fully briefed.

## II. Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) should be granted where the court lacks subject-matter jurisdiction over the claims alleged in the complaint. Federal courts are courts of limited jurisdiction: they "possess only the jurisdiction authorized them by the United States Constitution and by federal statute." *See United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009). As the party asserting jurisdiction, the plaintiff bears the burden of proving that the district court has subject-matter jurisdiction. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

Under Rule 12(b)(6), dismissal for failure to state a claim is appropriate if the allegations in the complaint do not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8(a) prescribes "liberal pleading standards," requiring only that a plaintiff submit a "short and plain statement of the claim showing that [he] is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). But this requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Although a court will accept factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Indeed, the court need not accept legal conclusions couched as factual allegations or "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). At bottom, the complaint must contain factual allegations sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Federal courts are obliged to "liberally construe the claims of *pro se* litigants" in applying the above analysis. *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012). However, this requirement "does not transform the court into an advocate." *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). "While *pro se* complaints may 'represent the work of an untutored hand requiring special judicial solicitude,' a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Id.* (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985)). Accordingly, although the facts alleged in a plaintiff's complaint must be taken as true, bare conclusory statements "are not entitled to the assumption of truth." *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679)).

### III. Discussion

Defendants have moved for dismissal under Rule 12(b)(1) for lack of subject-matter jurisdiction and under Rule 12(b)(6) for failure to state a claim. Mot. to Dismiss (Mar. 16, 2020), ECF No. 30-1. Rice's *pro se* pleadings[1] do not explicitly set out counts or causes of action, but Defendants have construed his allegations as falling within three distinct categories. Construing the pleadings as liberally as possible, the Court agrees with Defendants and finds Rice's pleadings to allege the following: (1) claims asserted against a federal official under the Federal Tort Claims Act (FTCA); (2) claims arising under the Administrative Procedure Act (APA); and (3) claims of constitutional violations by a federal official arising under the *Bivens* doctrine. For the following reasons, the Court **GRANTS** Defendants' motion to dismiss as to all these claims.

---

[1] As Defendants did, *see* Mot. to Dismiss at 7, the Court construes both Rice's initial form complaint, ECF No. 3, and his responses to Magistrate Judge Toliver's questionnaire, ECF No. 13, as the "complaint" in this case.

5

## A.  FTCA Claims

In his responses to Magistrate Judge Toliver's questionnaire, Rice alleges that Defendant Shubert tortiously harmed him while Shubert was acting in his official federal capacity. Questionnaire Resp. at 14–15 (Jan. 29, 2019), ECF No. 13. Specifically, Rice accuses him of "willful personal negligence in the performance in [his] assigned duties which resulted in . . . injury to [Rice]." *Id.*

The FTCA waives the sovereign immunity of the United States as to certain tort claims against federal officers. *See* 28 U.S.C. § 1346(b). Prior to bringing an FTCA claim in federal court, a plaintiff must exhaust his administrative remedies by presenting an administrative claim to the appropriate federal agency. *See* 28 U.S.C. § 2675(a). Only after six months have passed, or the appropriate federal agency has rendered a final denial of the claim in writing, may the plaintiff initiate action in a federal court. *See id.*

Defendants assert, and Rice does not contest, that Rice has never filed any administrative claim alleging tortious conduct by Shubert. The Court thus finds that Rice has failed to exhaust his administrative remedies and **GRANTS** the motion to dismiss under Rule 12(b)(1) as to any FTCA claims that can be construed from the pleadings.[2]

## B.  APA Claims

Rice's pleadings claim that the Board acted "arbitrarily and capriciously" by instituting a restitution plan and by using condition 9 of Rice's parole agreement as its means of enforcement. *See* Questionnaire Resp. at 13. He further claims that the decision to set his monthly payments first

---

2   Rice makes the same allegation of tortious conduct against Bruce T. Brown and Thomas Uiselt but has not named either as a defendant in this case. To the extent that the complaint, construed liberally, can be interpreted as asserting FTCA claims against these two individuals, those claims are barred for the same reasons.

at $10,000, and then at $1,000 under the modified restitution plan, was an "arbitrary and capricious" action. *See id.* at 4.

Rice's use of the phrase "arbitrary and capricious" against the Board, a federal entity exercising agency discretion, suggests a challenge under the APA. The APA provides for review of final agency action but prohibits judicial review in two instances: "when 'statutes preclude judicial review,' or when 'agency action is committed to agency discretion by law.'" *See Angelex Ltd. v. United States*, 723 F.3d 500, 506 (4th Cir. 2013) (quoting 5 U.S.C. § 701(a)(2)). Agency action is committed to agency discretion by law when the authorizing statute is drawn so broadly that "a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).

Under the APA, a reviewing court must set aside agency actions that it finds to be "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' including action that is 'contrary to constitutional right, power, privilege, or immunity.'" *United States v. Williams*, 170 F.3d 431, 434 (4th Cir. 1999) (quoting 5 U.S.C. § 706(2)). Agency action is arbitrary and capricious when "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, [or] offered an explanation" that is at odds with the evidence presented or "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Roe v. U.S. Dep't of Def.*, 947 F.3d 207, 220 (4th Cir. 2020) (quoting *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 293 (4th Cir. 2018)).

The federal statute authorizing the Air Force parole program states in pertinent part that "[t]he Secretary may provide a system of parole for offenders who are confined in military correctional facilities and who were at the time of commission of their offenses subject to the

authority of that Secretary." 10 U.S.C. § 952. Pursuant to this statute, the Air Force has established a parole program administered by Department of Defense (DOD) and Air Force regulations. *See Miller v. Air Force Clemency & Parole Bd.*, No. JFM-10-2621, 2011 WL 4402497, at *4–5 (D. Md. Sept. 20, 2011), *aff'd*, 472 F. App'x 210 (4th Cir. 2012). Under those regulations, the Board has extremely broad discretionary authority in making parole decisions. *See* DOD Instruction No. 1325.07, ¶ (20)(c)(1), ECF No. 30-4, at 35 (permitting a military parole board to "establish and subsequently modify conditions of supervision as reasonable and appropriate, to include a restitution plan"); Air Force Instruction 31-105, ¶ 12.16.4, ECF No. 30-3, at 120 (authorizing the Board to "modif[y] any conditions for release it considers reasonable and appropriate"); *see also Gaskins v. Ledwith*, No. 14-3070-RDR, 2015 WL 1470330, at *4 (D. Kan. Mar. 31, 2015) ("[The Board] is vested with 'highly discretionary' authority to decide whether to grant parole, and to decide which type of parole is appropriate.").

In view of this, the Court holds that the Board's decision to modify Rice's parole by instituting the restitution plan, including its terms, is a decision "committed to agency discretion by law" and therefore not reviewable by this Court.[3] Even if that decision were subject to judicial review, the Court would not find that the Board acted in an arbitrary or capricious manner by seeking to enforce the binding conditions of Rice's supervision plan. The Court finds that Rice has failed to state a claim under the APA and **GRANTS** the motion to dismiss as to any APA claims that can be construed from the pleadings.

---

[3] Those courts that have entertained challenges to conditions of military parole have done so only in the context of petitions for writs of habeas corpus, not in the context of reviewing agency action under the APA. *See, e.g.*, *Moultrie v. Sec'y of the Army*, 723 F. Supp. 2d 1230, 1234 (C.D. Cal. 2010); *Huschak v. Gray*, 642 F. Supp. 2d 1268, 1280 (D. Kan. 2009); *Miller*, 2011 WL 4402497, at *8.

### C. *Bivens* Claims

Under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, a plaintiff whose constitutional rights have been violated by a federal officer acting in their individual capacity under the color of federal authority may sue the officer for monetary damages. *See* 403 U.S. 388, 397 (1971). *Bivens* actions may be asserted against defendants in their individual, not official, capacities; any *Bivens* remedy "is against federal officials individually, not the federal government." *Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996); *see also FDIC v. Meyer*, 510 U.S. 471, 484–86 (1994) (explaining that federal agencies are not liable for constitutional violations under *Bivens* actions).

While Defendants argue that Rice's pleadings allege no discernible violation of a constitutional right, the Court finds that the pleadings can be liberally construed to allege violations of his Fifth Amendment due process rights. *See* Questionnaire Resp. at 3 ("[Defendants] have deprived me of my rights and civil liberties by attaching an impermissibly vague condition on my Parole Agreement[.]"). Even so, these allegations do not give rise to a cause of action under *Bivens* because, to the extent they are made against Shubert and not the Board, they can only plausibly be understood to seek to hold Shubert liable in his official, not individual, capacity. A suit against a Government officer in his official capacity is tantamount to a suit against his employer. *See FDIC*, 510 U.S. at 484–45. In this case, the claim fails for the same reasons that the claims against the Board fail. Accordingly, the Court **GRANTS** the motion to dismiss as to any *Bivens* claims that may be construed from the pleadings.

**IV. Conclusion**

The Court finds that Rice has failed to exhaust his administrative remedies on his FTCA claims and has failed to state a claim on any other ground. Defendants' motion to dismiss is therefore **GRANTED** and the case is **DISMISSED WITH PREJUDICE**.

A separate order will issue.


February 25, 2021                                       _____/s/_____
                                                                    PETER J. MESSITTE
                                                        UNITED STATES DISTRICT JUDGE